UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
MAR 1 5 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-125-GWU

ROBERT SEARS,            PLAINTIFF,

VS.      **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,        DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Sears

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that Sears had complaints of low back pain, being status post discectomy at L5-S1 on the left and right lumbosacral radicular syndrome. (Tr. 19). The plaintiff was considered restricted to a limited range of light level work (Tr. 20) and, while this prevented the performance of his past work, he was considered able to perform a significant number of jobs identified by a vocational expert (VE) (Tr. 21-22). Thus, the claims for benefits were denied. (Tr. 24).

The hypothetical given to the VE included: (1) an exertional capacity for no more than light work, (2) no more than occasional climbing, stooping, balancing, kneeling, squatting, balancing, crouching and crawling; (3) no work around any vibration, dangerous or moving machinery, or unprotected heights; and (4) a need for a sit-stand option. (Tr. 269). The plaintiff correctly argues that these restrictions were improperly based on assessments from a non-examining medical reviewer (Tr. 185-192) who was not privy to the assessment of physicians such as Treating Physician Bernard Moses (Tr. 191) and, thus, could not comment on the distinctions between his opinion and that of the medical examiners of record. See <u>Barker v. Shalala</u>, 40 F.3d 789, 794 (6th Cir. 1994).

7

Sears

The defendant contends that it could rely on information from the plaintiff's neurosurgeon, David Hauge. Hauge performed a left L5 discectomy in January, 2002, 11 months <u>before</u> the alleged onset date. He released the plaintiff for work "without restriction," albeit with a warning about possible recurrent disc herniation several months later, still long before the onset date (Tr. 157). The plaintiff apparently did not return to this particular doctor until mid-<u>2004</u>, at which time Hauge recommended physiatry[1] (not psychiatric as claimed by the ALJ at Tr. 20) management or possible long-term pain management (Tr. 222) of his <u>right</u> leg symptoms. While he did not personally cite work restrictions, his reference to "permanent or partial long-term work restrictions" which could be obtained from Doctors Bellner or Lakatosh (Tr. 217) makes it obvious that he was not excluding the existence of restrictions, as opposed to what the ALJ seemed to feel (Tr. 20). Thus, without supportive medical interpretation from another source, this does not support the residual functional capacity chosen by the ALJ and given to the VE.

Moreover, instead of visiting Dr. Hauge during the interim period between mid-2002 to mid-2004, the plaintiff had sought treatment from Bernard Moses. Decreased lumbar range of motion, tenderness or spasms were repeatedly seen in 2003 and early 2004 (Tr. 173-177, 179, 201, 204-205). Occasionally, there were

---

[1]Physiatrics; that branch of medicine which deals with the diagnosis, treatment, and prevention of disease with the aid of physical agents, such as light, heat, cold, water, and electricity, or with mechanical apparatus; physical medicine. <u>Dorland's Illustrated Medical Dictionary</u> (27th Ed.), p. 1291.

8

Sears

references to positive straight leg raising and decreased sensation. (E.g., Tr. 210). The doctor ordered an MRI in November, 2003 which (according to the radiologist) was said to show a *disc protrusion at L4-5 which was compressing the right sided L5 nerve within the thecal sac* as well as degenerative disc disease of L5-S1 and a 18 millimeter hemangioma in the vertebral body of L2. (Tr. 183). Moses then issued an assessment, the only one of record from a long-term treating source since the alleged onset date, which restricted the plaintiff to less than a full range of sedentary work (indeed, less than full-time work) (Tr. 214), which was incompatible with the hypothetical factors. Further, it is clear that Moses' opinion is supported by clinical data.

Finally, the most recent opinion of record, from James Templin, a pain care specialist, contains restrictions (Tr. 234-236) in excess of what was considered in the hypothetical question and, thus, does not support the administrative decision.

The case will be remanded for further consideration.[2]

This the ___15___ day of March, 2006.

*[signature]*
G. WIX UNTHANK
SENIOR JUDGE

---

[2]Some discrepancies do exist in the record which mitigate against an immediate award of benefits. For example, does the 2004 MRI (Tr. 226) which was felt to be basically normal (Tr. 217) represent an improvement over the MRI evidence before Moses (Tr. 183)? Only medical sources could provide an analysis of this type, including whether the plaintiff might have been severely limited for a closed period.

9